13643

MYERS v. INDUSTRIAL LIFE & HEALTH INSURANCE CO.

(169 S. E., 676)

*Messrs. Tobias & Turner,* for appellant.

*Messrs. John W. Jennings* and *D. McK. Winter,* for respondent.

May 31, 1933.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

The complaint in this action, while alleging much, was not very clear. But no demurrer was interposed, and there was no motion to make its allegations more definite and certain.

When all the evidence had been received, and the trial Judge, Honorable M. S. Whaley, of the County Court of Richland County, where the case was heard, was considering the defendant's motion for a directed verdict in its favor, he made inquiry of counsel for the plaintiff as to what was the theory of the plaintiff's case. After several questions, one of the attorneys for the plaintiff finally said the theory of the complaint was "fraudulent breach of the contract that this company perpetrated." The defendant's counsel, it seems, did not contest that declaration.

After overruling the motion of the defendant for a directed verdict, the trial Judge proceeded to charge the jury the law relating to a breach of contract of insurance, accompanied by fraudulent acts. The charge was very clear, and correctly stated the legal principles. There is no question on the part of the appellant here as to anything said in the charge.

The verdict and judgment were in the favor of the plaintiff for $180.00 actual damages and $500.00 punitive damages.

The exceptions relate only to the refusal of the trial Judge to grant the defendant's motion for a directed verdict as to both actual and punitive damages.

· We proceed to treat the exceptions on the theory accepted by the Judge and all the attorneys in the trial Court.

The appeal presents little law. In fact, not a single authority on any legal proposition has been cited by either side in oral argument or in the printed briefs.

To decide the issues, it is necessary to at least summarize the developed facts. This we attempt to do, agreeing, however, with the statement of Judge Whaley, in refusing the motion of the defendant, that "it is more or less of a mix up, it is hard to get at the bottom of it in a way."

We state the facts in a light favorable to the plaintiff, for the rule is, when a defendant seeks a directed verdict in his favor, the evidence must be regarded in the manner most favorable to the plaintiff.

The assured, Mary Myers, and the alleged beneficiary, the plaintiff, Marie Myers, in this case, were daughters of Maria Myers, and these parties are negroes. All of them, especially the mother, were very ignorant. The defendant is engaged, principally, in what is called "industrial insurance," for small premiums, payable weekly or monthly, insuring the health and lives of its patrons for small sums.

The old mother, Maria, for many years had the "insurance habit." Evidently she believed thoroughly in insuring herself and members of her family. She had been "a member" of the defendant company for around thirteen years, starting when she lived in Lexington County. In the fall of 1930, she removed from Lexington County to Columbia, leaving word with a neighbor to tell the collector when he came where she could be found. The collector, while not receiving this information, did, in January, 1931, succeed, through a daughter of Maria, in finding the old woman's dwelling place in Columbia.

Prior to the time Maria was located, she had with the defendant some six or more policies, the insured being herself, her daughters, Mary and Marie, and her grandchildren. The agent who found her, and she was living next door to her

daughter, Carrie Franklin (who for some unaccountable reason, Maria had not insured), told her that she was behind with her premiums and the policies had "lapsed." But he said that they could be revived, and the company would give her a chance, if she would make payments along until "she got caught up." Upon that information, Maria made an immediate payment of $3.00, and thereafter continued making payments, all of which the agents of the company, not only willingly, but gladly, accepted.

One of the policies, so the plaintiff claimed, the one on which this action was based, was a "straight life" policy, on Maria's daughter, Mary, and Marie, the plaintiff, was the beneficiary. Maria, who could not read, knew that she had a policy of this kind for about five years, and all the time had been making payments on the premiums thereon. Marie and her sister, Carrie Franklin, both of whom could read, had seen the policy. They testified that under its terms, after its continuance for as long as six months, the beneficiary, in case of death of the insured, would receive $180.00, but, under the terms of this particular policy, if the insured died within six months, the beneficiary would receive only $45-.00.

In February or March, 1931, while Maria was still paying on her policies, Mary got sick, and request was made of the company's agent for a "sick blank," that claim for benefits under a "health policy" might be made. About this time the agent in charge of Maria's collections was changed. Two or three agents visited her in these days. Finally, one of the agents called Maria's attention to the fact that her receipt books were all filled up; that she would have to get a new book; and that it would be necessary for him to take the "straight life" policy to the office, so as to get the number of the policy to put on the new receipt book. In the presence of Carrie Franklin, more money on the premium account of the disputed policy was paid, and the agent took away the "straight life" policy.

The "straight life" policy was never returned. Soon after that, there was on the records of the company's books another policy, dated in January, 1931, on the life of Mary. The company claimed this was a brand-new policy, and had no relation to any former "straight life" policy. In fact, it said there had been no former "straight life" policy on the life of Mary. The "new" policy carried the name of the old woman, Maria, as the beneficiary.

In March, 1931, Mary died. She was very sick from the time her illness first developed, and at least one of the agents of the company knew of this illness. If there was a former policy, as contended for by the plaintiff, she was entitled to $180.00. If there was no former policy, and the new policy was of force, then Maria was entitled to only $45.00; Marie was entitled to nothing.

The plaintiff served notice on the defendant to produce the policy alleged to have been issued several years previous, but the company said it could not produce it, since there had been none in existence. Upon the evidence of the plaintiff, her mother, and her sister that such policy had been issued, proof of its existence and its terms was admitted by the trial Judge.

The positions of the appellant are:

(1) That the plaintiff cannot recover because she sued on a policy specifically numbered, when the testimony, without contradiction, showed that the plaintiff was not the beneficiary named in that policy.

(2) That the plaintiff cannot recover, because, under the showing made, the policy was "revived" on condition that the arrears in premium should be paid, and that such arrears had not been paid prior to the death of the insured.

(3) That there was no evidence warranting punitive damages.

The appellant, in its first position, has overlooked the claim of the plaintiff. The policy, or rather the duplicate, produced at the trial by the appellant, did

bear the number alleged by the plaintiff in her complaint to be the one upon which she brought her action. That duplicate did show that Maria Myers, and not Marie, the plaintiff, was the beneficiary. But the plaintiff claimed, and she offered some evidence to substantiate that claim, that this "new" policy had been fraudulently substituted for the former policy, which had been intrusted to an agent of the company, and that the former policy made her the beneficiary.

As to appellant's second position, due regard has not been given to the plaintiff's claim, also supported by evidence, that the alleged "straight life" policy, on which she sued, was "revived" by the payment of some premiums, with the understanding that Maria Myers, who was paying the premiums, would be allowed opportunity to "catch up" with the arrears. The facts called for a charge on the part of the presiding Judge as to waiver, and the law thereabout was correctly charged. The appellant does not even question the correctness of the instructions given.

As to appellant's third position, if the fraudulent acts, testified to by the plaintiff's witnesses, occurred, clearly the appellant was subject to punitive damages.

Perhaps, as appellant's able counsel have so strongly argued in this Court, the appellant and all its agents concerned in the transactions are entirely innocent of any wrongdoing. But the evidence was altogether sufficient to send the case to the jury. In addition to the plaintiff's evidence, it was clearly shown that there was considerable confusion in the receipt books in the possession of the old colored mother, furnished her by the appellant. And one of these receipt books indicated that there had been a "revival," after a "lapse" of a policy, probably the one sued on, upon which premium payments had been made for several years. One of the agents of the appellant company, who handled some of the transactions with the mother of the plaintiff, admitted

that he had "made mistakes" in his entries in one of the receipt books.

The trial Judge stated, on the motion for a directed verdict, that there was sufficient evidence to go to the jury on the issues made. In refusing a new trial, he said, "I am of the opinion that there was ample evidence to go to the jury on the questions of both actual and punitive damages and that the verdict found by the jury was the result of such reasonable inference as could have been drawn from the evidence."

The jury heard all of the evidence and saw the witnesses. In support of her cause, the plaintiff depended upon the testimony of members of her family, who were colored, poor, and ignorant. They were corroborated, and at least supported, by the confused receipts of the appellant. The claims of the appellant were supported by its own officers and agents, all white people. The jury, composed of six white citizens of Richland County, have said that the plaintiff's cause was just, and that the defendant endeavored to defraud her. Under the evidence, and the law by which we are bound, we cannot say that the jury's verdict was wrong.

The judgment appealed from is affirmed.

MESSRS. JUSTICES STABLER, CARTER and BONHAM concur.